UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   3/30/2016
```

------------------------------------------------------------X

JOSEPH ALBUNIO and HOMELAND SAFETY : 
CONSULTANTS, INC., :
 :
                              Plaintiffs, :              15-CV-152 (VEC)
 :
         -against- :              OPINION & ORDER
 :
INTERNATIONAL SAFETY GROUP, INC., :
CERTIFIED SITE SAFETY, INC., CERTIFIED :
SITE SAFETY OF N.Y., LLC, MICHAEL :
GIANATASIO, BRIAN HEALION, JAMES :
TROLIO and MICHAEL BENJAMIN, :
 :
                              Defendants. :
------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Plaintiffs, Joseph Albunio ("Albunio") and Homeland Safety Consultants, Inc.

("Homeland"), bring claims for breach of contract, fraud, unjust enrichment, aiding and abetting

fraud, breach of fiduciary duty, and RICO violations following the merger of Homeland with the

predecessor-in-interest to Defendant International Safety Group, Inc. ("ISG") in November 2012.

Defendants Certified Site Safety, Inc. and Certified Site Safety of NY, LLC (together,

"Certified"), and Michael Gianatasio ("Gianatasio" and, together with Certified, the "Moving

Defendants") have moved to dismiss Plaintiffs' First Amended Complaint ("FAC") pursuant to

Fed. R. Civ. P. 12(b)(6) and Rule 9(b) and the Private Securities Litigation Reform Act (the

"Motion").[1]  For the following reasons, the Moving Defendants' Motion is GRANTED.

---

[1]      The Moving Defendants, not without just cause, believed that Counts I and II of the FAC alleged claims for
violations of the federal securities laws.  Defs. Mem. 12-15.  Plaintiffs disclaim any attempt to allege federal
securities law violations, Pls. Opp. 8, and therefore the Court has considered those counts to be brought under state
law.

BACKGROUND[2]

Plaintiff Homeland is a New York corporation, which, at all relevant times, was engaged in providing site safety and training services on construction-related projects.  FAC ¶ 22.  In or around 2012, Plaintiff Albunio, the former president, founder and majority shareholder of Homeland, became interested in taking Homeland public through a reverse merger with other companies in the site safety sector.  *Id.* ¶¶ 22, 31-32.  At that time, Homeland had annual revenue of approximately $4-5 million.  *Id.* ¶ 22.  Albunio consulted with OmniView Capital, LLC ("OmniView"), a non-party consultant, which advised that Homeland would need at least $10 million in revenue before going public.  *Id.* ¶ 32.  In or around June 2012, OmniView introduced Homeland to Defendant Gianatasio, whose wife, Penny Gianatasio, nominally owned Certified, another site safety business.  *Id.*  ¶ 33.  At that time, Certified had approximately $7-8 million in annual revenue.  *Id.* ¶ 33.

In the summer and fall of 2012, Albunio and Gianatasio negotiated a proposed transaction pursuant to which Homeland, Certified and a third non-party company would be merged into a public shell entity called Benaco, Inc. ("Benaco").  *Id.* ¶ 34; Albunio Decl. 1.  In or around October 2012, Benaco was purchased for approximately $250,000 by Homeland's investment advisor, OmniView.  *Id.* ¶ 20.  Plaintiffs allege that, at a meeting between Albunio and Gianatasio in or around October 2012, it was agreed that Gianatasio would be the Chief Executive Officer of any newly-formed public entity because Certified would be the company contributing the most business to the merged entity.  *Id.* ¶ 35.  Gianatasio nevertheless allegedly assured Albunio that all Homeland employees would be retained post-merger unless Albunio agreed otherwise.  *Id.*  Based on Gianatasio's representation that Certified would be rolled-into

---

[2]     For the purposes of this Motion, the Court assumes the well-pled factual allegations of the FAC to be true.  *See Turkmen v. Hasty*, 789 F.3d 218, 233 (2d Cir. 2015).

2

the Benaco shell, the parties further agreed that Gianatasio would be permitted to buy discounted Benaco shares and that he would also acquire voting control of the company. *Id.* ¶¶ 36, 66. Gianatasio also allegedly drafted or signed off on investor presentations stating that Certified would be rolled-into Benaco. *Id.* ¶¶ 37-39.  As attachments to their FAC, Plaintiffs have submitted declarations of various Benaco investors averring that Gianatasio induced them to invest by representing, *inter alia*, that Certified, along with its $7-$8 million in annual revenue, would be included in the Benaco merger.  Gallo Decl. ¶ 3; Goldberger Decl. ¶ 4; Caridi Decl. ¶ 5.

On November 12, 2012, Homeland entered into a Share Exchange Agreement ("SEA") with Benaco.  FAC ¶ 43.[3]  Pursuant to the SEA, Albunio and the other Homeland shareholders agreed to convert 100% of their Homeland shares into Benaco shares.  O'Connor Decl., Ex. D, Section 1.1.  Albunio thus received Benaco shares "[i]n consideration for merging Homeland's business into Benaco and relinquishing control of Homeland to [Benaco]."  FAC ¶ 22.  The SEA states that the Homeland shareholders bear "any economic risks" associated with their investment in the Benaco shares.  SEA, Section 3.6.  The SEA makes no mention of Certified and affirmatively disclaims any obligation to retain Homeland employees post-merger.  SEA,

---

[3]     Defendants included the SEA as an exhibit to their Motion.  When deciding a motion to dismiss, courts must generally either ignore documents outside of the complaint or treat the motion as a motion for summary judgment. *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988).  A complaint is, however, "deemed to include . . . any statements or documents incorporated in it by reference." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citation omitted).  Moreover, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotations and citation omitted).  "Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Cortec Indus.*, 949 F.2d at 48.

Plaintiffs' FAC explicitly references the SEA, FAC ¶ 43; Albunio Decl. ¶ 16, and the SEA is integral to the FAC because it is the agreement pursuant to which the reverse merger at issue was effected.  As a party and signatory to the SEA, Plaintiffs had actual notice of, and relied upon, the contents of the SEA in framing the FAC. Accordingly, the Court may—and will—consider the SEA in deciding Defendants' Motion.

Section 3.8 ("[T]he hiring of any person as an employee of Benaco . . . after the Closing Date shall be in the sole discretion of Benaco and nothing contained herein shall be deemed to require Benaco . . . to hire or retain any former employee or independent contractor of Homeland.").

Shortly after the execution of the SEA, Benaco's name was changed to ISG. *Id.* ¶¶ 20, 39. In accordance with the parties' agreement, Gianatasio became ISG's CEO and President, purchased ISG shares at a discounted price, and obtained control of ISG. *Id.* ¶¶ 36, 66-67. Although Albunio and other shareholder investors believed that Certified would be rolled-in shortly thereafter, Certified never contributed its assets or business to Benaco or ISG. *Id.* ¶ 44; Albunio Decl. ¶ 17; Gallo Decl. ¶ 7; Goldberger Decl. ¶ 6; Caridi Decl. ¶ 6. Instead, as early as December 2012, Gianatasio began taking actions that Albunio viewed as contrary to the best interest of the business for the benefit of Certified.[4] Plaintiffs allege that ISG lost millions of dollars in profits per year as a result of projects that Gianatasio diverted from ISG to Certified. *Id.* ¶¶ 68-71.

Despite having allegedly assured Albunio and other investors that Certified would be merged into ISG imminently, in January 2013, Gianatasio stated that he was no longer willing to do so because he did not want to jeopardize Certified's status as a "Woman Owned Business." *Id.* ¶¶ 47, 53. Instead, Gianatasio promised that he would allow ISG's CFO, Robert Simoni, to

---

[4] According to the FAC, Gianatasio began: terminating former Homeland employees and replacing them with Certified employees over Albunio's objections, FAC ¶¶ 45-46, 55-63; restricting former Homeland employees' access to basic ISG business functions, *id.* ¶¶ 50, 55; using ISG assets to fund Certified's expenses, *id.* ¶ 51, and Gianatasio's personal life insurance policy, *id.* ¶ 75; devaluing the profitable training business formerly owned by Homeland by eliminating its website and search engine optimization company, *id.* ¶ 77; adding Gianatasio's associates, Brian Healion and James Trolio, as members of ISG's Board without shareholder consent or Board approval, *id.* ¶ 73; appointing Healion to be ISG's President without Board approval even though Healion was not qualified for the position, *id.* ¶ 74; appointing Trolio to be ISG's Executive Vice President of construction even though Trolio was not qualified for the position, *id.* ¶¶ 28; appointing Certified's controller, Michael Benjamin, to be ISG's Chief Compliance Officer and Treasurer, *id.* ¶¶ 29, 50, 60; and diverting contracts, business contacts and proprietary information formerly held or associated with Homeland for the benefit of Certified, *id.* ¶¶ 54, 68-69, including by converting Requests for Proposals received by ISG into bids submitted by Certified, *id.* ¶ 68, and requiring ISG employees to work on Certified projects, *id.* ¶ 79.

audit Certified, *id.* ¶¶ 59-60, and that Certified's profits would be shared with ISG.  With the exception of a few business contracts that Certified sent to ISG in February 2013, however, Certified never contributed any business or assets to ISG, *id.* ¶¶ 58-61, and when Mr. Simoni pressed Gianatasio for the promised audit, he was effectively fired on May 31, 2013, *id.* ¶ 61.  Gianatasio then caused ISG's Form 8-K for the relevant period to reflect that Simoni had taken another position with an ISG subsidiary, which was false.  *Id.* ¶¶ 61-62.  By approximately August 2013, Gianatasio had fired all but two of the former Homeland employees, including every manager or "key person" at Homeland.  *Id.* ¶¶ 63, 67.

Plaintiffs filed their initial Complaint in this action on January 8, 2015, which Defendants moved to dismiss.  Plaintiffs then filed an Amended Complaint on August 14, 2015, which Defendants, again, have moved to dismiss.

## DISCUSSION

### I.    Legal Standard

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."  *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 120 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Courts must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  *L.C. v. LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 398 (S.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)).  Furthermore, courts are generally confined to "the four corners of the complaint" and must "look only to the allegations contained therein." *Perez*

*v. Westchester Foreign Autos, Inc.*, No. 11–CV–6091(ER), 2013 WL 749497, at *5 (S.D.N.Y.

Feb. 28, 2013) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

## II.      Plaintiffs Fail to State a Valid RICO Claim

Plaintiffs assert RICO violations under 18 U.S.C. §§ 1962(c) and (d).  FAC ¶¶ 108-141.

The civil RICO statute, 18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or

associated with any enterprise engaged in, or the activities of which affect, interstate or foreign

commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's

affairs through a pattern of racketeering activity or collection of unlawful debt."[5]  "To establish a

claim for a civil violation of section 1962(c), 'a plaintiff must show that he was injured by

defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999) (quoting

*Azrielli v. Cohen Law Offices*, 21 F.3d 512, 520 (2d Cir. 1994)).

### a.  Albunio Might Have RICO Standing, but Homeland Does Not

To establish RICO standing, a plaintiff must plead, at a minimum, "(1) the defendant's

violation of § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the

injury by the defendant's violation."  *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir.

2003) (quoting *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 380

(2d Cir. 2001)).  Defendants have moved to dismiss under 12(b)(6), not 12(b)(1), and the Court

treats their standing argument as one that goes to the merits of Plaintiffs' RICO claims, rather

than as one that challenges Plaintiffs' standing for jurisdictional purposes.  *See Lerner*, 318 F.3d

at 116-17, 129-30 ("[D]espite describing the proximate causation requirement as 'RICO

standing,' such standing is not jurisdictional in nature under Fed. R. Civ. P. 12(b)(1), but is rather

---

[5]      Subsection 1962(d) makes it unlawful to conspire to violate any of the prior subsections, including 18 U.S.C. § 1962(c).

an element of the merits addressed under a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim.").

Defendants argue that Albunio lacks standing because the injuries that he suffered as a shareholder are derivative of ISG's injuries and, therefore, are insufficiently direct to establish the necessary element of proximate causation. Defs. Mem. 21-24. Courts have generally held that a shareholder does not have standing to assert RICO claims in his or her individual capacity based on claims of injury suffered by a third-party in which he or she has a financial interest. *See, e.g.*, *Bingham v. Zolt*, 66 F.3d 553, 561 (2d Cir. 1995) ("[T]he general principle [is] that a shareholder cannot sue in his individual capacity to redress wrongs inflicted upon a corporation in which he holds stock." (citing cases)); *Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d Cir. 1993) ("Since the shareholder's injury . . . generally is derivative of the injury to the corporation, the shareholder's injury is not related directly to the defendant's injurious conduct." (citing *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268-69 (1992)). In so holding, the Second Circuit has noted that, under such circumstances, the interests of judicial economy generally favor derivative actions, where there can be "one damage award that will restore the corporation and, therefore, its shareholders, creditors, and employees." *Manson*, 11 F.3d at 1132 (2d Cir. 1993).

The Second Circuit has, however, recognized a "special duty exception" to the general rule against shareholder standing, which applies when the plaintiff alleges a "duty that was separate and distinct from the duty owed to" other shareholders. *Id.* at 1131 (citation omitted); *see also Nordberg v. Lord, Day & Lord*, 107 F.R.D. 692, 698 (S.D.N.Y. 1985) ("It is only where the injury sustained to one's stock is peculiar to him alone, and does not fall alike upon other stockholders, that one can recover as an individual."). Courts have generally applied this exception in cases involving claims of fraudulent inducement or breach of a duty owed uniquely to the plaintiff. For example, in *Ceribelli v. Elghanayan*, the Second Circuit found that RICO

7

standing could exist when defendants fraudulently failed to disclose material information and made intentional misstatements to certain shareholders in connection with a stock sale.  990 F.2d 62, 64 (2d Cir. 1993).  In *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, the court likewise found that standing could exist based on plaintiff's allegations that it was induced to invest as a result of defendants' misrepresentations and fraudulent omissions.  924 F.Supp. 449, 464 (S.D.N.Y. 1996) (citing cases).

Here, Albunio alleges that Defendants fraudulently induced him to exchange his Homeland shares for Benaco shares, and then improperly diverted Benaco's assets (consisting of business that was formerly Homeland's) to Certified.  *Id.* ¶ 118.  In asserting that Gianatasio used false promises that he would roll Certified into Benaco to fraudulently induce Albunio to cede control of Homeland and to trade his Homeland shares for Benaco shares, Albunio alleges an injury that is not common to all shareholders (such as Gianatasio, himself), and therefore Albunio would have standing if he could plausibly allege a RICO violation.

On the other hand, there is no logical basis for finding that Homeland has standing. While Plaintiffs claims that Homeland still exists as an "active" corporation, Pls. Opp. 8, Plaintiffs concede that Homeland was merged into Benaco, which later changed its name to ISG. FAC ¶¶ 22, 43.  Because Plaintiffs fail to articulate how Homeland's interests or alleged injuries differ from those of its successor, Defendant ISG, and because Albunio disavows any attempt to sue derivatively on behalf of Homeland or ISG, Pls. Opp. 8 & n.1,  it is unclear on what basis Homeland is a Plaintiff.  The Court finds that Homeland lacks standing.  Nonetheless, as described below, even if both of the Plaintiffs had standing, Plaintiffs' RICO claims fail because Plaintiffs do not plausibly allege a RICO violation.

**b.  Plaintiffs Fail to Allege Predicate Acts Constituting a Pattern of Racketeering**

Plaintiffs allege that Defendants fraudulently induced Albunio to merge Homeland into Benaco and then diverted Benaco's assets to Certified.  Plaintiffs also allege that Defendants committed mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343, between November 2012 and August 2013 "in pursuing the RICO scheme."[6]  *Id.* ¶¶ 118-19; *see also* 18 U.S.C. § 1961(1) (defining "racketeering activity" to include, as alleged here, predicate acts of mail and wire fraud).  The elements of mail and wire fraud are "(1) the use of interstate mail or wires in furtherance of (2) a scheme to defraud (3) with money or property as the object."  *Maersk, Inc. v. Neewra, Inc.*, 687 F. Supp. 2d 300, 332 (S.D.N.Y. 2009) (citing *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000)), *aff'd sub nom. Maersk, Inc. v. Sahni*, 450 F. App'x 3 (2d Cir. 2011).  "'The predicate mail or wire communications need not themselves contain fraudulent communications,' but they must be material to a scheme that has a fraudulent and deceptive purpose."  *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 497 (S.D.N.Y. 2007) (quoting *USA Certified Merchants, LLC v. Koebel*, 262 F. Supp. 2d 319, 332 (S.D.N.Y. 2003)), *aff'd*, 328 F. App'x 695 (2d Cir. 2009).  While allegations of mail and wire fraud must generally be pled with particularity in accordance with Rule 9(b),[7] courts in this District have found that, where plaintiffs merely allege mail or wire fraud "in furtherance of a scheme to

---

[6]      The Moving Defendants argue that Plaintiffs RICO claims are improperly predicated on time-barred federal securities fraud claims, Defs. Mem. at 12-14, but that is not what the FAC alleges.  Instead, the FAC alleges that Plaintiffs' RICO claims are predicated on mail and wire fraud in connection with communications made and transactions effected from November 2012 to August 2013.  FAC ¶ 119.

[7]      Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Generally, therefore, "[p]laintiffs must plead . . . mail [or wire] fraud with particularity, and establish that the [communications] were in furtherance of a fraudulent scheme," *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (citation omitted), which typically requires stating "the contents of the communications, who was involved, [and] where and when they took place, and . . . why they were fraudulent."  *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) (internal quotation marks and citation omitted); *see also First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004).

defraud" (as opposed to asserting that the mail or wire transmissions were themselves fraudulent), "then the complaint does not have to be as specific with respect to each allegation of mail or wire fraud, so long as the RICO scheme is sufficiently pled to give notice to the defendants." *World Wrestling Entm't, Inc.*, 530 F. Supp. 2d at 498 (quoting *M'Baye v. New Jersey Sports Prod., Inc.*, No. 06 CIV.3439(DC), 2007 WL 431881, at *7 (S.D.N.Y. Feb. 7, 2007) (Chin, J)); *see also Angermeir v. Cohen*, 14 F. Supp. 3d 134, 146 (S.D.N.Y. 2014) (citing cases). The Court need not determine whether Plaintiffs meet this standard, however, because even if Plaintiffs plausibly allege that Defendants used mail or interstate wires in furtherance of a scheme to defraud, Plaintiffs have not alleged a "pattern of racketeering," which is necessary to state a claim under RICO.

In order to plead a "pattern of racketeering," a plaintiff must plausibly allege multiple acts of racketeering activity occurring within 10 years of each other, *see* 18 U.S.C. § 1961(5); *Elsevier, Inc. v. Grossman*, No. 12 CIV. 51219(KPF), 2013 WL 6331839, at *9 (S.D.N.Y. Dec. 5, 2013), and the predicate acts must be "related" and "continuous." *See H.J. Inc., et al. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 238-44 (1989). "Continuity" may be established through either "a closed period of repeated conduct, or [ ] past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241 (citation omitted); *see also First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180 (2d Cir. 2004) (RICO plaintiffs "must allege either an open-ended pattern of racketeering activity (*i.e.*, past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (*i.e.*, past criminal conduct extending over a substantial period of time)." (quoting *GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463, 466 (2d Cir. 1995))).

As an initial matter, the headings of Plaintiffs' RICO claims assert that their RICO claims are based on "conduct [occurring] on and *after* November 12, 2013," FAC ¶¶ 108-41 (emphasis

added), but all of the alleged predicate acts occurred *prior to* November 12, 2013.  *Id.* ¶ 119.  For example, Plaintiffs allege that, within nine months of Homeland's merger (or by approximately August 2013), Gianatasio terminated all of Homeland's employees and replaced them with employees of Certified, using either email or telephone to do so.[8]  *Id.* ¶¶ 22, 119.  Plaintiffs further allege that Defendants caused ISG funds to be used to pay Certified employees via wire transfers from "late November [2012] to at least August 2013," *id.* ¶ 119, and authorized ISG to pay Certified employees' phone bills via email in April 2013, *id.*  In addition, Plaintiffs allege that Defendants caused ISG's business projects, customers, contacts and employees to be sent to or shared with Certified via mail, email or telephone from approximately May 2013 through July 2013.[9]  Thus, as a threshold matter, Plaintiffs have failed to allege *any* predicate acts during the time period (post-November 2013) during which they allege the RICO enterprise was operating.

Plaintiffs' only attempt to resolve this glaring discrepancy is to assert, in conclusory fashion, that Defendants' conduct was "designed to extend indefinitely."  FAC ¶ 130.  Even if the Court were to accept this bare assertion, Plaintiffs would not succeed in alleging a related and continuous pattern of predicate acts.

### 1.  Plaintiffs Fail to Allege an "Open-Ended Pattern of Continuity"

An "'open-ended pattern of continuity' exists where defendants' predicate acts represent an ongoing way of conducting defendants' business."  *Kalimantano GmbH v. Motion in Time,*

---

[8]     While not necessary to the Court's decision to dismiss Plaintiffs' claims, the Court notes that Plaintiffs' RICO claims based on allegations of fraud arising from Gianatasio's termination of former Homeland employees are not plausibly pled because the SEA, to which Homeland was a party and which Albunio signed on behalf of Homeland, specifically disclaims any representation that Homeland employees would be retained post-merger. SEA, Section 3.8.  While the termination of Homeland employees may be evidence of Defendants' intent to defraud (or acts in furtherance of the fraud), Plaintiffs' claim that they relied on Gianatasio's representation regarding the retention of Homeland employees is not plausible in light of the express terms of the SEA disavowing any such representation.

[9]     Among the alleged predicate acts, Plaintiffs also claim that Gianatasio used email fraudulently to direct ISG employees to commit insurance fraud.  FAC ¶ 119.  Plaintiffs fail, however, to describe how this fraudulent act "relates" to the asserted scheme to defraud them, or how Plaintiffs suffered any injury as a result.

*Inc.*, 939 F. Supp. 2d 392, 406 (S.D.N.Y. 2013) (citing *H.J. Inc.*, 492 U.S. at 243). With respect

to an enterprise that is primarily legitimate, there "must be some evidence from which it may be

inferred that the predicate acts were the regular way of operating that business, or that the nature

of the predicate acts themselves implies a threat of continued criminal activity." *Kalimantano*,

939 F. Supp. 2d at 406 (quoting *DeFalco v. Bernas*, 244 F.3d 286, 323 (2d Cir. 2001) (other

citations omitted)); *cf. SKS Constructors Inc. v. Drinkwine*, 458 F. Supp. 2d 68, 80 (E.D.N.Y.

2006) (plaintiffs' allegation that predicate acts were the only way the business operated were

sufficient to establish open-ended continuity for purpose of motion to dismiss).

   Plaintiffs concede that ISG conducts legitimate business in the site safety sector, and thus

ISG is not an essentially illegitimate enterprise. FAC ¶¶ 45, 50, 67-71, 77-81, 119. Although

Plaintiffs contend that "open end pattern continuity is satisfied" because the asserted predicate

acts were the "regular way Defendants did business," FAC ¶ 130, Plaintiffs' allegations are

insufficient as a matter of law. Plaintiffs have essentially alleged a single fraud that was carried

out over the course of approximately nine months. In sum, Gianatasio made material

misrepresentations and omissions in order to induce Albunio to merge Homeland into

Benaco/ISG, with the goal of eliminating competition and increasing his own profitability in the

site safety sector through his control of both ISG and Certified. Accepting all facts and drawing

all inferences in Plaintiffs' favor, it is plain that this scheme had a clear starting point (in October

or November 2012) and a clear end (in approximately July or August 2013). *See, e.g.*, FAC ¶ 82

("In just nine months, Defendants succeeded in their scheme to destroy a successful business

competitor (Homeland) and to steal so much of its business as they could divert to Certified.").

It is well-established that such an "inherently terminable" scheme cannot establish open-ended continuity for RICO purposes.[10]  For example in *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, the Second Circuit found that Defendants' year-long mail and wire fraud scheme did not constitute open-ended continuity because it was a "discrete and relatively short-lived scheme to defraud a handful of victims through racketeering activity" rather than a regular way of doing business.  187 F.3d at 244 (citation omitted); *see also id.* (holding that an "inherently terminable" scheme, *i.e.*, one that has (or must) come to a definite conclusion, "does not imply a threat of continued racketeering activity"); *GICC Capital Corp.*, 67 F.3d at 466 ("Even if we assume that defendants' scheme was designed to deprive [the company] of its assets, it is clear that the scheme was *inherently* terminable." (emphasis in original)); *First Capital Asset Mgmt.*, 385 F.3d at 180-81 (claims of open-ended continuity in case involving terminable fraudulent conveyance scheme "defie[d] logic;" even if scheme had not come to a close by debtor's bankruptcy filing, "continued silent concealment of assets is not a predicate act" under the RICO statute (citation omitted)).

As noted, *supra*, a plaintiff can also state a claim of open-ended continuity if the nature of the predicate acts themselves implies a threat of continued criminal activity.  *DeFalco*, 244 F.3d at 323.  The Second Circuit has clarified however, that this theory only applies to "inherently

---

[10]     Setting aside the issue of continuity, Plaintiffs' allegations of what amounts to a single fraud scheme are simply insufficient to show a "pattern" of any kind, even if the scheme is associated with multiple non-fraudulent mailings and wire communications.  Even if Plaintiffs could show that the alleged fraud amounted to "racketeering activity" (as opposed to a garden-variety state law fraud scheme), it is beyond cavil that a single incident of racketeering activity does not constitute a "pattern" for RICO purposes.  *See United States v. Cain*, 671 F.3d 271, 284 (2d Cir. 2012) ("[W]e have held that the commission of two racketeering acts in furtherance of the RICO enterprise is not alone sufficient to establish a RICO pattern." (citations omitted)); *see also H.J. Inc.*, 492 U.S. at 230 (a RICO pattern "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." (quoting 18 U.S.C. § 3575(e)); *cf. United States v. Indelicato*, 865 F.2d 1370, 1376 (2d Cir.1989) (en banc) ("If there are similarities between [different acts] with respect to victim, methodology, goal, etc., and if there is evidence of a threat of continuation of racketeering activity, we conclude that the acts may constitute a pattern even though they are nearly simultaneous.").

unlawful" criminal activities in pursuit of "inherently unlawful" goals, such as murder, obstruction of justice, narcotics trafficking, embezzlement, extortion, bribery, and money laundering.  *See United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir. 1995); *World Wrestling Entm't. Inc*, 530 F. Supp. 2d at 516 (citing cases); *Kalimantano*, 939 F. Supp. 2d at 407-08 (citing cases).  In contrast, ordinary fraud is not considered "inherently unlawful" under this theory.  *See Aulicino*, 44 F.3d at 1111 (citing cases); *Int'l Bhd. of Teamsters v. Carey*, 297 F. Supp. 2d 706, 715 (S.D.N.Y. 2004) ("[F]raud (the object of which is by definition to obtain money or property from others) has been held not to be 'inherently unlawful' in the RICO continuity context." (citation omitted)), *aff'd sub nom. Int'l Bhd. of Teamsters v. Blitz*, 124 F. App'x 41 (2d Cir. 2005); *Econ. Opportunity Comm'n v. Cnty. of Nassau*, 47 F. Supp. 2d 353, 366-67 (E.D.N.Y. 1999) (mail fraud, wire fraud and Hobbs Act predicates are not inherently unlawful for purposes of RICO continuity).  Because Plaintiffs' RICO claims are predicated solely on an allegation of fraud, Plaintiffs cannot establish open-ended continuity.

### 2.  Plaintiffs Fail to Allege a "Close-Ended Pattern of Continuity"

Nor can Plaintiffs establish a pattern of racketing under a theory of "closed-ended continuity."  Because "close-ended continuity" hinges primarily upon the duration of the alleged predicate acts, *DeFalco*, 244 F.3d at 321, a plaintiff seeking to establish continuity under this theory must prove "a series of related predicates extending over a substantial period of time."  *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242).  It is well-settled that "[p]redicate acts extending over a few weeks or months . . . do not satisfy this requirement."  *H.J. Inc.*, 492 U.S. at 242.  Indeed, the Second Circuit "has never held a period of less than two years to constitute a 'substantial period of time'" for purposes of demonstrating closed-ended continuity.  *DeFalco*, 244 F.3d at 321 (citing cases).  Plaintiffs have clearly stated that the alleged scheme was carried out over a period of only eight or nine months and, therefore, close-ended continuity cannot be pled.  *See, e.g.*,

14

FAC ¶ 22 ("In less than eight months following that merger, Defendant Gianatasio . . . managed to realize Defendants' plan and scheme . . . ."); *cf. Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) (predicate acts spanning no more than sixteen months are "insufficient . . . to demonstrate closed-ended continuity under this Court's precedents" (citation omitted)); *H.J. Inc.*, 492 U.S. at 242 ("Congress was concerned in RICO with long-term criminal conduct.").

Because Plaintiffs have failed to allege, as required, two or more predicate acts constituting a pattern of racketeering activity, Defendants' Motion is GRANTED with respect to Plaintiffs' claim under 18 U.S.C. § 1962(c), and Plaintiffs' claim under 1962(c) is dismissed.

**c. Plaintiffs Fail to Allege RICO Conspiracy**

It is well-settled that where a plaintiff has failed to plead a substantive RICO claim, related claims for RICO conspiracy claim under § 1962(d) must be dismissed. *See, e.g.*, *First Capital Asset Mgmt.*, 385 F.3d at 164 ("[B]ecause Plaintiffs' RICO conspiracy claims are entirely dependent on their substantive RICO claims, we also concur in the District Court's dismissal of the RICO conspiracy claims."); *Helios Intern. S.A.R.L. v. Cantamessa USA, Inc.*, No. 12 Civ. 8205(RWS), 2013 WL 3943267, at *9 (S.D.N.Y. July 31, 2013) ("[I]n the absence of a validly pled substantive RICO claim, Plaintiffs' claim under 18 U.S.C. § 1962(d) for RICO conspiracy fails as well." (citation omitted)).  For the reasons noted *supra*, Plaintiffs have failed adequately to allege a pattern of racketeering activity under RICO subsection 1962(c). Accordingly, Defendants' Motion is GRANTED with respect to Plaintiffs' claim under 18 U.S.C. § 1962(d), and Plaintiffs' RICO conspiracy claim is dismissed.

### III.    Plaintiff's Remaining State Law Claims are Dismissed for Lack of Subject Matter Jurisdiction

Having dismissed Plaintiffs' RICO claims, all that remains are Plaintiffs' state law claims.  Pursuant to 28 U.S.C. § 1367(c)(3), district courts may decline to exercise supplemental jurisdiction over non-federal claims where the court "has dismissed all claims over which it has original jurisdiction."  The Second Circuit has held that while section 1367(c) is permissive, rather than mandatory, "where all the federal claims have been dismissed at a relatively early stage, the district court should decline to exercise supplemental jurisdiction over pendent state-law claims." *Astra Media Grp., LLC v. Clear Channel Taxi Media, LLC*, 414 F. App'x 334, 337 (2d Cir. 2011); *see also Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) ("if [all] federal claims are dismissed *before trial* . . . the state claims should be dismissed as well" (alterations and emphasis in *Motorola*) (internal quotation marks and citation omitted)); *First Capital Asset Mgmt.*, 385 F.3d at 183 (finding no abuse of discretion in district court's declining to exercise supplemental jurisdiction over state law claims after dismissing RICO claims prior to trial).  Plaintiffs' state law claims are therefore dismissed without prejudice to Plaintiffs' ability to renew them in a state court of competent jurisdiction.

### CONCLUSION

For the foregoing reasons, the Moving Defendants' Motion is GRANTED.  Plaintiffs' RICO claims are dismissed with prejudice and without leave to replead,[11] and his remaining state

---

[11]    Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave" to a party to amend its complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2). "Leave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (other citation omitted)).  Here, granting Plaintiffs leave to replead their RICO claims would be futile. Plaintiffs have already had two chances to plead their case.  In response to Defendants' motion to dismiss the initial Complaint they repled, but still failed to state a claim under RICO.  An additional opportunity would be futile as the clear thrust of the RICO claim is that the Defendants engaged in a single fraud furthered by non-fraudulent mail and wire communications that continued for less than a year.  No matter how those facts are pled, they simply do not add up to a violation of the federal RICO law.

claims are dismissed without prejudice.  The Clerk of Court is respectfully requested to close all

open motions and terminate the case.

**SO ORDERED.**

**Date:  March 30, 2016**
         **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**